COWEN, Circuit Judge.
I must respectfully dissent. The District Court’s sentence was both procedurally and substantively unreasonable. It committed plain procedural error because it did not begin the sentencing process by calculating the applicable Guidelines range. The District Court then failed to give “ 'meaningful consideration’ ” to the statutory sentencing factors, especially the characteristics of the defendant herself. (Maj. Op. at 160 (quoting United States v. Flores-Mejia, 759 F.3d 253, 256 (3d Cir. 2014) (en banc)).) It likewise failed to acknowledge and respond to Yoder’s request for a downward variance on the basis of uncontested expert evidence “regarding Yoder’s psychological and intellectual state and her likelihood of reoffending.” (Id. at 4.) I also conclude that the sentence was substantively unreasonable because no reasonable sentencing court would have sentenced this particular defendant to twenty-five years’ imprisonment for the reasons the District Court provided.
A sentencing court must begin by calculating a defendant’s Guidelines sentence. See, e.g., Flores-Mejia, 759 F.3d at 256. The government acknowledges that the District Court “did not explicitly state the [Guidelines] range.” (Appellee’s Brief at 29.) When asked by the District Court if there were any additions or corrections to the PSR, defense counsel indicated that there were none (and agreed to a minor correction offered by the government). Yo-der acknowledges that the correct Guidelines range (thirty years to life) was set forth in the PSR. But we “value formality in sentencing to the extent that it promotes the goals of procedural uniformity, meaningful review, and substantive fairness.” United States v. Clark, 726 F.3d 496, 502 (3d Cir. 2013) (citing United States v. Fumo, 655 F.3d 288, 318 (3d Cir. 2011); United States v. Ausburn, 502 F.3d 313, 328-29 (3d Cir. 2007)). “Chief among our duties in fulfilling this.'important role’ [of appellate review] is ensuring that district courts follow proper sentencing procedures.” United States v. Merced, 603 F.3d 203, 214 (3d Cir. 2010) (quoting United States v. Tomko, 562 F.3d 558, 575 (3d Cir. 2009) (en banc)). At the very least, the District Court should have begun at the first step of the sentencing process—the calculation of the Guidelines range—instead of asking questions about the PSR only after it had already purportedly completed the second and third steps by ruling on the departure motion and considering the relevant statutory factors.
In any event, the District Court clearly failed to consider in a meaningful fashion the statutory factors, especially Yoder’s own personal characteristics, as well as Yoder’s request for a variance based on her intellectual and mental disabilities, amenability to treatment, and likelihood of reoffending. “To satisfy step three, the district court ‘must acknowledge and respond to any properly presented sentencing argument which has colorable legal *163 merit and a factual basis.’ ” Mejia-Flores, 759 F.3d at 256 (quoting United States v. Begin, 696 F.3d 405, 411 (3d Cir. 2012)).
Yoder presented, through the report and testimony of a clinical psychologist, extensive evidence regarding her serious intellectual and mental disabilities. As the majority recognizes, she is a thirty-two-year-old woman who has the approximate intellectual level of a nine-year-old child. She was hospitalized on two occasions on account of her mental problems and diagnosed with “Major Depressive Affective Disorder, single episode, severe, with psychotic features; Dysthymic Disorder; and Post-Traumatic Stress Disorder, delayed ‘type’ onset” (A55) as well as “Major Depression, recurrent, severe” (A56.) After her arrest, the doctors at the Philadelphia Federal Detention Center found that she suffered from “Unspecified Bipolar and Related Disorder, Unspecified Anxiety Disorder, and Unspecified Intellectual Disability,” (A56.) Concluding that Yoder is neither a pedophile nor a sexual predator, Dr. Sultan opined that “[s]he’s a very infantile, very compulsive, needy person who is desperate for the attention of men.” (A112.) According to Dr. Sultan, Yoder’s conduct was motivated by her desire to attract the attention, and possibly the financial assistance, of men. The expert further opined that Yoder (although she understood on a certain level that what was doing was wrong) did not appreciate the serious harm she had inflicted on her children.
In addition, the evidence presented to the District Court clearly indicated that Yoder is amenable to treatment and her risk of reoffending is very low. According to Dr. Sultan, “[tjhere are specific [BOP] programs, cognitive behavioral programs, that are shown to be quite effective over a period of time.” (A111-A112.) Yoder would also benefit from a combination of an anti-psychotic medication, an antidepressant, and psychotherapy. Yoder had been placed on such medications following her arrest, and Dr. Sultan observed her improvement over time. Yoder had expressed deep remorse and sadness about the harm she caused her children, for whom “she expresses great love and affection.” (Alll.)
Asking for the statutory minimum sentence of fifteen years, Yoder’s counsel insisted that this was an unusual case and asserted that her disabilities (and history of abuse) “caus[ed] her to behave in the way that caused this crime to happen.” (A157.) Counsel further noted “her success on consistent medication” as well as “the fact that there are programs that exist to address just these issues.” (A160.) The government did not present any expert evidence of its own to contest Dr. Sultan’s assessment. Although Dr. Sultan was cross-examined at some length, she continued to insist that, with the proper treatment regimen, “[Yoder’s] very unlikely to reoffend.” (A138.) In fact, the government does not claim that these arguments about Yoder’s intellectual and mental disabilities, amenability to treatment, and the likelihood of reoffending lacked either colorable legal merit or a factual basis. As the majority puts it, “Yoder presented plausible arguments for a downward variance, including that she was amenable to treatment and had diminished culpability due to her mental disabilities and her tragic history.” (Maj. Op. at 161.)
Yet the District Court failed to acknowledge and respond to these disability and recidivism arguments—and failed to consider the evidence regarding these “characteristics of the defendant” under § 3553(a)(1). According to the majority, the sentencing judge “responded to Yo-der’s arguments by noting that the sentence *t[ook] into account the person that st[ood] in front of the District Court, as *164 well as referring to the defendant’s ‘very-tragic history.’ ” (Maj. Op. at 160-61 (footnote omitted).) “These statements, coupled with the fact that the judge did grant a variance, suggest that the judge considered Yoder’s arguments for a variance.” (Id. at 8.) However, § 3663(a)(1) refers to both the “history” as well as the “characteristics of the defendant.” See, e.g., TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 161 L.Ed.2d 339 (2001) (“It is a ‘cardinal principle of statutory construction’ that ‘a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.’ ” (quoting Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001))). Even if the District Court adequately considered Yo-der’s “history” of abuse, it did not meaningfully address the issues regarding her intellectual and mental “characteristics.” The reference to having taken into account the person standing in front of me appears to be nothing more than a prefatory statement of a district court’s general obligations at sentencing. After all, the District Court immediately qualified this statement by referring to “the crime that was committed” (A166). Given the extensive and uncontested evidence presented in this case, I would expect, at the very least, a sentencing court to say something about the fact that the person sentenced to twenty-five years’ imprisonment functions intellectually at the level of a nine-year-old child—yet has a very low chance of committing future offenses given her amenability to a treatment regimen, including a highly successful prison program designed for individuals just like her. The District Court did not do so.
According to the majority, the District Court’s “individualized considerations distinguish this case from United States v. Olhovsky, 662 F.3d 530 (3d Cir. 2009), on which Yoder relies heavily, because in Ol-hovsky, the sentencing court omitted ‘any consideration for [the defendant’s] subnormal social development’ and amenability to treatment despite testimony regarding these points.” (Maj. Op. at 160-61 n.12 (quoting Olhovsky, 562 F.3d at 550).) I cannot agree. In Olhovsky, we found that a child pornography sentence was procedurally unreasonable because, among other things, “it is not at all apparent that the court actually considered the lengthy, very specific and highly positive reports of any of the three defense experts” and instead focused on incapacitation, deterrence, and punishment to the exclusion of the other sentencing factors. Olhovsky, 562 F.3d at 547. Given the treating psychologist’s belief that Olhovsky’s lack of emotional maturity (i.e., he functioned at the emotional level of a fourteen or fifteen-year-old juvenile) directly contributed to the offense, “the sentencing court should have either explained the extent to which, if any, Ol-hovsky’s immaturity factored into its sentence of six years imprisonment, or explained why it was irrelevant.” Id. at 551, Likewise, “it is not at all apparent” that the District Court in this case considered Dr. Sultan’s uncontested expert report and testimony, at least with respect to Yoder’s disabilities, her amenability to treatment, or her likelihood of reoffending. In fact, it did not expressly mention the expert evidence or even refer to Dr. Sultan herself. Focusing on the seriousness of Yoder’s criminal conduct and the need to protect children, the District Court “was so appalled by the offense that it lost sight of the offender.” Id. at 549. The sentencing court in Olhovsky stated that the defendant had not been responsive to treatment, despite, inter alia, the opinion of the treating psychologist indicating the opposite. Id. at 548-49. It also characterized Olhov-sky as a “pedophile monster,” even though *165 the government’s own expert did not support such a drastic characterization. Id at 547-48. In this case, the District Court indicated that Yoder posed a risk to her children and others—without mentioning Dr. Sultan’s opinion that Yoder is neither a pedophile nor a sexual predator and, on the contrary, is amenable to treatment and very unlikely to reoffend. I also note that this Court found that the sentence was unreasonable even though a variance had in fact been granted.[1] Id. at 546-53.
In addition, I find that the procedural errors committed here were obvious, affected substantial rights (i.e., they were prejudicial), and affected the fairness, integrity, or public reputation of judicial proceedings. See, e.g., Flores-Mejia, 759 F.3d at 259. It is uncontested that the errors, if they had in fact occurred, were obvious. Insofar as these errors implicate fundamental aspects of the sentencing process, they affected substantial rights. Imposing a lengthy sentence—without following the requisite sentencing procedures, without considering meritorious variance arguments, and without really addressing the statutory sentencing factors—likewise implicated the fairness, integrity, and public reputation of this criminal proceeding. See, e.g., Clark, 726 F.3d at 502 (noting that we value formality in sentencing); Merced, 603 F.3d at 216 (“We require this explanation [of the sentence], not because we distrust courts or seek to second guess them, but because such an explanation is necessary and vital to us in performing meaningful substantive reasonableness review.” (citing Tomko, 562 F.3d at 575; Cooper v. United States, 437 F.3d 324, 329 (3d Cir. 2006))).
“[I]f the district court’s sentence is pro-eedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided.” Tomko, 562 F.3d at 568, While our preferred course upon finding that the district court committed procedural error is to remand the case without going any further, see, e.g„ Merced, 603 F.3d at 214, ‘“procedural problems may lead to substantive problems, so that there are times when a discussion of procedural error will necessarily raise questions about the substantive reasonableness of a sentence,’ ” Olhovsky, 562 F.3d at 553 (quoting United States v. Levinson, 543 F.3d 190, 193 (3d Cir. 2008)); see also, e.g., Merced, 603 F.3d at 215 (“These procedural requirements exist tq ‘guide the [district court’s] exercise of discretion,’ and failure to observe them may ]ead a court to impose a substantive unreasonable sentence.” (quoting United States v. Goff, 501 F.3d 250, 256 (3d Cir. 2007))). Accordingly, the Olhovsky Court determined that, in light of the factual and procedural errors corn- *166 mitted by the sentencing court, it was substantively unreasonable to sentence Ol-hovsky to six years of imprisonment. Olhovsky, 562 F.3d at 553.
I reach the same conclusion here. I do not, by any means, minimize the despicable nature of Yoder’s criminal conduct. She took sexually explicit photographs of her own young children (an eighteen-month-old daughter and a six-year-old daughter), sent sexually explicit photographs of her six-year-old daughter to someone she believed to be a pedophile, and then offered to send this child to this individual for sexual activity (going so far as to provide him with the information needed to obtain an airline ticket). In turn, Dr. Sultan herself acknowledged that Yoder horribly damaged her children (who could continue the cycle of abuse by becoming sexual offenders themselves), and, as the majority notes, the potential harm if she did reof-fend “could be extremely serious.” (Maj. Opinion at 162.) With that said, I do not believe that a reasonable sentencing court would have sentenced a severely intellectually disabled and mentally ill abuse victim—who (according to uncontested expert testimony) is neither a pedophile nor a sexual predator but is amenable to treatment and presents a very low risk of reof-fending—to serve twenty-five years in prison. As I have already observed, the District Court, like its counterpart in Ol-hovsky “was so appalled by the offense that it lost sight of the offender.” Id. at 549. While a substantial term of imprisonment appears to be appropriate, a sentence of twenty-five years—as opposed to a sentence closer to the statutory minimum—was substantively unreasonable under the specific circumstances of this case.
Because I thereby determine that the sentence imposed by the District Court was both procedurally and substantively unreasonable, I would vacate the sentence and remand for resentencing.

. Accordingly, I believe that the District Court did not meaningfully consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner,” § 3553(a)(2)(D), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,” § 3553(a)(6), and the need to "protect the public from further crimes of the defendant,” § 3553(a)(2)(C). The District Court did not mention Dr. Sultan’s testimony about the existence of "specific programs, cognitive behavioral programs, that are shown to be quite effective over a period of time.” (A111-A112.) In turn, “Yoder’s intellectual disability, her functioning at the level of a nine-year-old child, makes her substantially different from most other child pornography defendants.” (Appellant’s Brief at 24 (citation omitted).) Finally, the District Court told Yoder there was a clear need "for protection of your children and any other children that you might come in contact with” (A166)—without acknowledging and responding to the uncontested expert evidence indicating that, while Yoder is neither a pedophile nor a sexual predator, she is amendable to treatment and has a very low likelihood of reoffending.