NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1906
_____

UNITED STATES OF AMERICA

v.

NAUSHAD KHAN,
                              Appellant


_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-20-cr-00040-003)
District Judge:  Honorable Colm F. Connolly
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 20, 2023

Before:  JORDAN, GREENAWAY, JR., and McKEE, *Circuit Judges*

(Filed: March 23, 2023)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Naushad Khan pled guilty to an offense associated with the theft of numerous firearms. The District Court calculated his sentencing guidelines range as thirty to thirty-seven months. Khan argued for a downward variance to time served, and the government argued for an upward variance of seventy months. Given the severity of the crime, the Court varied upward and sentenced Khan to sixty months. Khan contests the procedural and substantive reasonableness of his sentence. Because the District Court committed no procedural error and the sentence was reasonable in light of the seriousness of the offense, we will affirm.

## I.    BACKGROUND

On May 31, 2020, at the height of rioting in Wilmington, Delaware following the widely publicized death of a Minnesota man named George Floyd while in police custody, Khan and four confederates burglarized a gun store located "in the outskirts of the city." (App. at 148.) In fact, they robbed it three times. All in all, the five men stole thirty-five firearms, including three rifles and one shotgun. Surveillance video footage showed Khan, who never entered the building, standing outside the store acting as a lookout during one of the burglaries, and a cell tower search warrant corroborated that Khan was near the store at the time of all the break-ins.

Khan was charged on August 13, 2020 in a superseding indictment for aiding and abetting the theft of firearms from a federal firearms licensee, a violation of 18 U.S.C. §§ 922(u), 924(i), and 2. Khan was arrested a week later and pled guilty to the charge in September 2021. At the time of his sentencing in April 2022, only eleven of the thirty-

2

five firearms had been recovered, and four of the recovered weapons had been cumulatively linked to many shootings, with at least six victims, two of whom were killed.[1]

At Khan's sentencing, the Court calculated his offense level to be nineteen, resulting in a sentencing range of thirty to thirty-seven months.[2] Khan argued for a downward variance to time served, in light of his lack of a prior criminal history, his work with at-risk youth, and his plans to develop a program to raise awareness about the risks of gun violence. He also argued that his criminal conduct was an "anomaly" and he was unlikely to ever get in trouble again, that he was remorseful, and that he accepted responsibility for his actions. (App. at 183.) Khan personally addressed the Court, explaining that his actions were triggered by his "own ignorance, … the George Floyd riots … and … financial duress [he] was facing after recently being let go of [from his] job …." (App. at 191.)

The government then requested an upward variance to a sentence of seventy months. It argued that the Sentencing Guidelines "just don't take … into account" the seriousness of the offense, which was, to the government's knowledge, "among the most

---

[1] The evidence did not conclusively show that the four weapons fired the rounds that hit the six victims. Rather, it only demonstrated that the four firearms discharged rounds at the scenes of the shootings where the victims were struck.

[2] Khan objected to the Presentence Investigation Report's failure to provide a reduction for Khan's minor role in the offense pursuant to U.S. Sentencing Guidelines Manual § 3B1.2(b). The District Court overruled that objection, and it is not at issue in this appeal.

egregious gun store robberies" that had ever occurred in Delaware. (App. at 197.) According to the government, the stolen guns had "been involved in at least a dozen shootings," resulting in death and serious injury to several victims, and that more shootings were "statistically … likely to happen in the future." (App. at 196.) It also argued that Khan manipulated the George Floyd tragedy for his personal gain, noting that "[p]eople are literally protesting against violence, and he is injecting guns into the street for violence to occur." (App. at 198.) The government acknowledged that the gun trafficking enhancement under U.S.S.G. § 2K2.1(b)(5) and the death or serious bodily injury departure under §§ 5K2.1 and 5K2.2 did not technically apply. Regardless, it argued that the Court should "apply an upward variance in spirit" of those departures, as the guidelines range did not account for the guns being both trafficked and linked to violent crimes. (App. at 199.) It asked the Court to enter a sentence of "[t]wo months a gun[,]" for a total of seventy months. (App. at 199.)

The Court then considered the sentencing factors in 18 U.S.C. § 3553(a). It stated that the purpose of sentencing was "to make sure that the sentence reflects the nature and circumstances of the offense[,]" to "have the sentence accomplish deterrence" of crimes both by Khan and the public at large, to avoid disparities in sentencing, and to promote rehabilitation. (App. at 213.) It made particular mention of the seriousness of the offense and its concern that the stolen guns would "all but certainly … lead to a killing" or "serious bodily injury of multiple people." (App. at 216.) The Court also considered the circumstances surrounding the thefts. It noted that the rioting on that day increased the severity of the offense because the gun store was not located where the protests were

4

occurring, and police forces were being mobilized to other locations, leaving the gun store vulnerable to theft. The Court thus inferred that "there was, if not manipulation, there was taking advantage of the fact that these riots were ongoing." (App. at 219-20.)

Ultimately, the Court determined it "necessary to sentence [Khan] above the guideline range to send a message that says this type of offense is exactly what people can't engage in because it is contributing to the violence." (App. at 216.) It agreed with the government that "the spirit of the trafficking enhancement would seem to have applicability here," as Khan stole the guns for monetary reasons. (App. at 222.) The Court therefore determined that the equivalent of a five-level enhancement, resulting in a sixty-month sentence, was appropriate. It stated that its sentence could be "th[ought] of" as "an offense level increase per victim that we already know of," totaling a six-level enhancement, reduced by one level to reflect Khan's positive characteristics, resulting in "ten months [sentenced] per victim" of the guns linked to the burglaries. (App. at 223-24.)

Khan timely appealed his sentence.

## II. DISCUSSION[3]

### A. Khan's Sentence is Procedurally Reasonable

We must first "ensur[e] that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range,

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review a district court's sentence for procedural and substantive reasonableness under an abuse-of-discretion standard. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en

treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Sentencing courts are to engage in a three-step process: (1) correctly calculate the defendant's advisory guidelines range; (2) rule on any motions for departure; and (3) exercise its discretion in applying the § 3553(a) factors. *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010).

The District Court here did precisely what our precedent requires. Khan does not contest that the Court correctly calculated his guidelines range at thirty to thirty-seven months, and neither party sought a departure. What Khan contends is that his sentence is procedurally unreasonable because the Court abused its discretion in the application of the § 3553(a) factors. He makes two arguments in support of that position. First, he says that the District Court "impermissibly relied upon the government's argument that the trafficking enhancement of U.S.S.G. § 2K2.1(b)(6)(B) applied 'in spirit.'"[4] (Opening Br. at 21.) Second, he argues that he was sentenced "under the mistaken belief that firearms stolen in the burglary were 'certainly going to lead to a killing … [or] serious bodily injury of multiple people.'" (Opening Br. at 23 (citing App. at 216).)

---

banc). Khan, as the party challenging the procedural and substantive reasonableness of his sentence, bears the burden of showing unreasonableness. *Id.*

[4] Khan cites to U.S.S.G. § 2K2.1(b)(6)(B), but the government argued that the spirit of § 2K2.1(b)(5) should apply.

Because he failed to raise either of those arguments in the District Court, plain error review applies.[5] It is Khan's burden to demonstrate such error, and he has failed to do so. That alone is fatal to his position. But even if plain error review did not apply, the District Court did not abuse its discretion in considering the "spirit" of § 2K2.1(b)(5), the gun trafficking enhancement. On the contrary, its opinion is exceptionally thorough. The Court made clear that, while it did not actually apply the enhancement, the severity of the burglaries justified an upward variance to capture the "spirit" of the enhancement. The theft of firearms for pecuniary gain, which subsequently were linked to several shootings, was obviously something the Court could consider. *See Pepper v. United States*, 562 U.S. 476, 489 (2011) ("Both Congress and the Sentencing Commission … expressly preserved the traditional discretion of sentencing courts to 'conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come.'") (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)); *cf. United States v. Larkin*, 629 F.3d 177, 193-94 (3d Cir. 2010) (holding that the district court properly analogized to a post-offense amendment to the sentencing

---

[5] Unpreserved claims that a district court committed a procedural error are reviewed for plain error. *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc). "It is a defendant's burden to establish plain error." *United States v. Womack*, 55 F.4th 219, 231 (3d Cir. 2022). "To satisfy this burden, a defendant must prove that: (1) the Court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected substantial rights, that is, the error affected the outcome of the proceedings." *Id.* "If all three elements are established, the Court may … exercise its discretion to award relief … only … where the defendant is 'actually innocent' or the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

guidelines that could not be applied against the defendant due to the ex post facto clause when it applied a five-level upward departure on the grounds that the existing guidelines did not adequately account for the severity of the crime).

Additionally, the District Court's finding that the stolen guns were "all but certainly … going to lead to a killing … [or] to serious bodily injury of multiple people" is not clearly erroneous. (App. at 216.) Only eleven of the thirty-five stolen firearms had been recovered by the time of Khan's sentencing, and four of those eleven weapons have been linked to multiple shootings, resulting in injuries and deaths. Khan argues that those weapons "[t]heoretically … could have been possessed lawfully and used in self-defense or for the defense of others." (Reply Br. at 5.) Such a theoretical possibility (and a highly unlikely one at that) does not result in clear error. *See United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) ("A finding is clearly erroneous when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (cleaned up) (quoting *Concrete Pipe & Prods of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993))). Given that some of the stolen firearms have already been linked with shootings, it was not clearly erroneous to conclude that the remaining weapons would probably be involved in more gun violence. *See id.* at 568 (holding that the burden of proof for facts relevant to sentencing is a preponderance of the evidence).

**B.      Khan's Sentence is Substantively Reasonable**

We turn next to the substantive reasonableness of Khan's sentence. "The touchstone of reasonableness is whether the record as a whole reflects rational and

meaningful consideration of the factors enumerated in § 3553(a)." *Grier*, 473 F.3d at 571. We may not "presume that a sentence is unreasonable simply because it falls outside the advisory Guidelines range." *Tomko*, 562 F.3d at 567. Nor may we conclude that a sentence is unreasonable because we might conclude that a different sentence was appropriate. *Gall*, 552 U.S. at 51. Rather, a sentence is unreasonable if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

Khan argues that his sentence is unreasonable because the District Court did not properly take into account the significance of George Floyd's death. But the District Court did discuss that circumstance and concluded that Khan took advantage of rioting to commit a crime for financial gain. Khan also argues that mitigating factors – his lack of criminal history, acceptance of responsibility, and demonstration of genuine remorse – should have been afforded greater weight. Yet the District Court expressly considered those positive characteristics when it fashioned a sufficient sentence. Finally, Khan argues that a sentence of thirty months "would serve the same protective, rehabilitative, and deterrent effects" as the sixty-month sentence he received. (Opening Br. at 27.) That argument fails too, as Khan fails to demonstrate that no reasonable sentencing court would have imposed a sixty-month sentence for aiding and abetting burglaries of a gun store on three separate occasions on the same day.

The District Court conducted a detailed analysis and reasonably determined that 60 months was a sentence sufficient, but not greater than necessary, to satisfy the aims of federal sentencing. There is no error in that.

9

**III.** **CONCLUSION**

For the foregoing reasons, we will affirm.